IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KARA A. WHITE,
        Plaintiff,

v.                                                 Civil Action No. 3:18-cv-360-JAG

VIRGINIA BOARD FOR PEOPLE WITH
DISABILTIES, et al.,
        Defendants.

## OPINION

Kara White claims that the Virginia Board for People with Disabilities ("the Board"), Heidi Lawyer, and Penni Sweetenburg-Lee failed to promote her and then fired her because of her disability in violation of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). She also says that the defendants retaliated against her because she advocated for people with disabilities. The defendants have moved to dismiss White's amended complaint for lack of subject matter jurisdiction and for failure to state a claim.

Because the Court has subject matter jurisdiction over White's ADA claims and she has stated plausible claims for relief under the ADA, the Court will deny the defendants' motion to dismiss as to White's ADA claims. The Court will also deny the motion as to White's retaliation claim under the Rehabilitation Act, but will grant the motion as to her claims for failure to promote and wrongful termination under the Rehabilitation Act.

### I. FACTS ALLEGED IN THE AMENDED COMPLAINT

White, who has cerebral palsy, worked part-time for the Board from 2007 until February, 2018. She handled three training programs for people with disabilities, including the Partners in Policy ("PIP") program. White's annual evaluations showed that she met or exceeded the Board's expectations.

1

In July, 2017, White emailed the Board's staff, asking them to use size 18-point font for all documents. Lawyer, the Board's Executive Director, responded that most people do not need 18-point font and that big font makes documents too long. Lawyer also told White that she should address her concerns with the communications director. White explained that the Board should have large prints on file because participants of the PIP program request larger font sizes every year. Lawyer responded that White should not instruct staff and that she should address further concerns with her supervisor, Sweetenberg-Lee. Sweetenburg-Lee also responded, thanking staff for their "responses and reprimands" and stating that she was "aghast" by White's email. (Am. Compl. ¶ 53.)

In August, 2017, White applied for a full-time training and alumni coordinator position with the Board. Sweetenberg-Lee and two others interviewed White for the position. On September 3, Sweetenberg-Lee told White that she did not get the position, but that the Board could "facilitate [White] moving on to somewhere else." (*Id.* ¶ 61.) Instead, the defendants promoted Ronita Wilson, who does not have a disability. Wilson had two years of experience working at the Board, while White had over ten years of experience.

On August 25, White learned that the Board planned to distribute a liability waiver to PIP participants, which she believed would discourage people with disabilities from attending PIP sessions. White told Sweetenberg-Lee that she believed the waiver discriminated against people with disabilities. On September 6, White expressed her concerns to Teri Morgan, a former employee of the Board, who contacted Lawyer. The next day, Lawyer sent an email to White and Sweetenberg-Lee, reprimanding White for ignoring the chain of command. White complained to Lawyer and Sweetenberg-Lee that they had insulted and disrespected her.

On September 12, Sweetenberg-Lee told White to stop attending meetings with the Board's directors. Several weeks later, Sweetenberg-Lee asked White to start sending daily updates and weekly reports to Sweetenberg-Lee, to respond to all emails in writing, and not to make any recommendations or send any emails without Sweetenberg-Lee's approval.

In White's November, 2017 performance evaluation, Sweetenberg-Lee praised White for her "knowledge of disability issues and her extraordinary responsiveness," but said that she expected White to respond to all emails in writing. (*Id.* ¶ 80.) On December 7, White asked Sweetenberg-Lee not to demean her in front of others. Sweetenberg-Lee responded, "I am sorry you felt demeaned, but I am sure it will not happen again, since you will be following this directive." (*Id.* ¶ 82.) On February 22, 2018, Lawyer fired White, citing her "unsatisfactory job performance." (*Id.* ¶ 84.)

White's amended complaint alleges that the defendants failed to promote her and fired her because of her disability in violation of the Rehabilitation Act (Count One) and the ADA (Count Two). White also claims that the defendants retaliated against her for her advocacy for people with disabilities in violation of the Rehabilitation Act and the ADA. The defendants have moved to dismiss White's Rehabilitation Act and ADA claims for failure to state a claim under Rule 12(b)(6) and her ADA claim for lack of subject matter jurisdiction under Rule 12(b)(1).

## II. DISCUSSION[1]

### A. ADA Claims

#### 1. Eleventh Amendment Immunity

Sovereign immunity is a jurisdictional issue. *See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987, 990 (4th Cir. 1997). State sovereign immunity protects the state from actions at law for damages and from suits in equity to restrain or compel governmental action. *Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 270 Va. 423, 454, 621 S.E.2d 78, 96 (2005). This immunity extends to state agents and state instrumentalities, like the Board. *Rector and Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244-45, 591 S.E.2d 76, 78 (2004).

A claim against a state or its agent may survive the Eleventh Amendment bar to suit in one of three recognized ways. First, Congress may abrogate Eleventh Amendment immunity. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Second, a state may waive its immunity. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Third, a plaintiff may seek prospective relief against state officials acting in violation of federal

---

[1] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

law under the principles set forth in *Ex parte Young*. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). White argues that the *Ex parte Young* exception applies to her ADA claims.

*Ex parte Young* established "an important limit on sovereign immunity" that permits "federal courts to vindicate federal rights." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011). To take advantage of this narrow exception, a plaintiff must properly characterize the relief sought as prospective and injunctive in nature. *See Frew*, 540 U.S. at 437. Determining whether a suit may proceed under *Ex parte Young* requires only that courts "conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Stewart*, 563 U.S. at 268 (alteration in original).

In this case, White only seeks compensatory damages under her Rehabilitation Act claims.[2] For her ADA claims, she seeks reinstatement or front pay, a declaratory judgment, injunctive relief, and attorney's fees and costs. Because White properly seeks prospective relief for her ADA claims, the Court has subject matter jurisdiction over those claims. *See Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) ("Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex Parte Young* exception applies.").[3] Accordingly, the Court will deny the defendants' motion to dismiss for lack of subject matter jurisdiction.

---

[2] Sovereign immunity does not bar White's claim for compensatory damages under the Rehabilitation Act. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 492-96 (4th Cir. 2005); *Litman v. George Mason Univ.*, 186 F.3d 544, 555 (4th Cir. 1999).

[3] *See also Pickering v. Va. State Police*, 59 F. Supp. 3d 742, 747 (E.D. Va. 2014) (explaining that requests for reinstatement, front pay, a declaratory judgment, injunctive relief, and attorney's fees and costs qualify as prospective forms of relief).

5

## 2. Failure to Promote and Wrongful Termination

White alleges that the defendants violated the ADA by discriminating against her in two ways: failure to promote and wrongful termination. To state an ADA discrimination claim, a plaintiff must plead facts showing that (1) she was a "qualified individual with a disability"; (2) she suffered an adverse employment action; (3) she "was fulfilling [her] employer's legitimate expectations"; and (4) "the circumstances of [the adverse action] raise a reasonable inference of unlawful discrimination." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). The defendants argue that White does not allege facts showing that their decisions not to promote her and to fire her raise an inference of unlawful discrimination.

White's amended complaint, however, "contains adequate factual allegations to state a [failure to promote] claim under the ADA." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999) (holding that "the causation standards applicable in Title VII actions are applicable to violations of [the ADA]"). White alleges that the defendants promoted a less qualified employee without a disability and that she received positive performance reviews during her time at the Board. These allegations allow the Court to draw the reasonable inference that the defendants failed to promote White because of her disability. *Cf. Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 795-96 (W.D. Va. 2012) (holding that the plaintiff pleaded sufficient facts to support a claim for failure to promote under Title VII by alleging that the defendant "hired or promoted many white males [for the position] but failed to promote plaintiff").

To support her wrongful termination claim, White alleges that she received positive performance reviews during her time at the Board and cites multiple incidents when the defendants unfairly scrutinized, criticized, and micromanaged her. Despite her qualifications and positive job reviews, the defendants fired her. Taken together, White's allegations "warrant a

reasonable inference of unlawful discrimination, allowing her claim of discriminatory termination to survive at this stage of the proceedings." *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 706 (E.D. Va. 2016) (holding that the plaintiff stated a claim for discrimination under the ADA by alleging that the defendants "subjected Plaintiff's performance to more strict scrutiny," "confronted her about the quality of her work," and "chastised [her] more harshly than others"). Accordingly, the Court will deny the motion to dismiss as to White's claims for failure to promote and wrongful termination under the ADA.

### 3. Retaliation

To state a claim for retaliation under the ADA, a plaintiff must allege sufficient facts showing that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) "a causal link exists between the protected conduct and the adverse action." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011). The defendants dispute the first and third prongs.

"Protected conduct falls into two distinct categories: participation or opposition." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Oppositional activity includes "utilizing informal grievance procedures . . . and voicing one's opinion to bring attention to an employer's discriminatory activities." *Id.* White says that she advocated for larger font sizes for PIP participants and opposed the Board's liability waiver. Because White alleged that she "oppos[ed] discriminatory practices in the workplace," she adequately pleads that she engaged in protected oppositional conduct. *Id.*

"An employee need not prove causation itself at the prima facie case stage: rather, a close temporal relationship between the protected activity and the adverse action is sufficient to show a casual nexus." *Brockman v. Snow*, 217 F. App'x 201, 207 (4th Cir. 2007). "While evidence as

7

to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

White says that she advocated for larger font sizes in July, 2017, and first opposed the waiver in August, 2017. The defendants told her that they would not promote her on September 3, 2017. White again opposed the waiver on September 6, 2017. The defendants fired White in February, 2018. By showing "a close temporal relationship" between engaging in protected conduct and the adverse employment actions, White has alleged the required causal link to survive a motion to dismiss. *Brockman*, 217 F. App'x at 207. White, therefore, pleads sufficient facts to support her retaliation claim under the ADA.

### *B. Rehabilitation Act Claims*

#### *1. Failure to Promote and Wrongful Termination*

White alleges that the defendants violated the Rehabilitation Act by discriminating against her in two ways: failure to promote and wrongful termination. To state a claim for disability discrimination under the Rehabilitation Act,[4] a plaintiff must allege facts showing that she "(1) has a disability; (2) is otherwise qualified for the employment; and (3) was excluded from that employment due to discrimination solely on the basis of her disability." *Reyazuddin v. Montgomery County*, 789 F.3d 407, 418 (4th Cir. 2015). "The third element contains two subparts: (1) adverse employment action and (2) discrimination based solely on disability." *Id.*

---

[4] Section 504(a) of the Rehabilitation Act of 1973 states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The defendants do not dispute that White alleges that she has a disability, that she was qualified for the job, or that she suffered an adverse employment action.

Unlike the ADA, the Rehabilitation Act requires plaintiffs to plead sufficient facts that would allow the Court to infer "discrimination *'solely* by reason of' disability." *Magness v. Hartford County*, No. ELH-16-2970, 2018 WL 1505792, at *14 (D. Md. Mar. 27, 2018) (quoting 29 U.S.C. § 794(a)). To support her failure to promote claim, White alleges that the defendants promoted a less qualified employee without a disability. Her claim for wrongful termination rests on her allegations that she earned positive performance reviews, that the defendant unfairly criticized and disrespected her, and that the defendants fired her despite her qualifications.

White's allegations fall short of the Rehabilitation Act's stringent causation standard.[5] *See Baird*, 192 F.3d at 468-69 (explaining the different standards "regarding the causative link between discrimination and adverse action" set forth in the ADA and the Rehabilitation Act). The bulk of White's allegations suggest other motivations for the defendants' actions. For example, White alleges that the defendants took the alleged discriminatory actions after she advocated for larger font sizes, opposed the liability waiver, and ignored the chain of command. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015) (holding that the plaintiff failed to state a claim "in light of the 'obvious alternative explanation'" for the alleged discriminatory action). Because White fails to "nudge[] [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court will grant the motion as to her claims for failure to promote and wrongful termination under the Rehabilitation Act.

---

[5] As explained in Part II.A.2, however, White's allegations do give rise to a plausible claim for disability discrimination under the ADA's more lenient causation standard. *See Baird*, 192 F.3d at 470 (holding that the plaintiff stated a claim for discrimination under the ADA "even though her complaint may be read to contain allegations that her absenteeism . . . also played a role" in the alleged discriminatory action).

*2. Retaliation*[6]

As explained above, White has alleged sufficient facts to support her retaliation claim under the ADA. Because the Rehabilitation Act and the ADA have identical anti-retaliation provisions, the Court will also deny the motion to dismiss as to her retaliation claim under the Rehabilitation Act. *See Brady v. Bd. of Educ.*, 222 F. Supp. 3d 459, 474 (D. Md. 2016).

## III. CONCLUSION

For the reasons set forth above, the Court will deny the motion to dismiss as to White's ADA claims and her retaliation claim under the Rehabilitation Act. The Court, however, will grant the motion to dismiss as to White's claims for failure to promote and wrongful termination under the Rehabilitation Act.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: / February   2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[6] The Rehabilitation Act incorporates the ADA's anti-retaliation provision. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir.2001); *see also* 42 U.S.C. § 12203(a) (prohibiting retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA or the Rehabilitation Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA or Rehabilitation Act]").